IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT


UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.                                 No. 25-10928-AA

GABRIELLA OROPESA,

    Defendant-Appellant.


On Appeal from the United States District Court
for the Middle District of Florida
Tampa Division
Case No.: 8:23-cr-25-VMC-AEP-4
Virginia M. Hernandez Covington, United States District Judge

_____


BRIEF OF APPELLANT

_____


Matthew P. Farmer, Esq.
Farmer & Fitzgerald, P.A.
800 W. De Leon St.
Tampa, FL 33606
Mattfarmer1@aol.com
(813) 228-0095; FAX (813) 224-0269


Counsel for Appellant


April 11, 2025

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT

Appellant, Gabriella Oropesa, hereby certifies that the following persons

have an interest in the outcome of this case:

1. AUSA Laura-Kate Bernstein

2. AUSA Noah B. Bokat-Lindell

3. AUSA Emily Chang

4. Hon. Virginia M. Hernandez Covington, United States District Judge

5. AUSA Courtney Derry

6. Matthew Farmer, Esq.

7. AUSA Erin Favorit

8. AUSA Daniel Grunert

9. U.S. Attorney (former) Roger Handberg

10. AUSA Stacie Harris

11. U.S. Attorney Gregory Kehoe

12. Ms. Gabriella Oropesa

13. Hon. Anthony Porcelli, United States Magistrate Judge

14. AUSA David Rhodes

15. Hon. Amanda Sansone, United States Magistrate Judge

C-1

16. U.S. Attorney (former acting) Sara Sweeney

17. AUSA Lisa Thelwell

There are no publicly traded companies or corporations that have an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested on an expedited basis, consistent with this Court's expedited briefing order. Th... impression. The first question is whether the Free Access to Clinic Entrances (FACE) Act, 18 U.S.C. § 248, ... term appears in the 1870 conspiracy against rights statute, 18 U.S.C. § 241. The second question is whether, after *Fischer v. United States*, 603 U.S. __, 144 S. Ct. 2176 (2024), and *Snyder v. United States*, 603 U.S. __, 144 S. Ct. 1947 (2024), enforcement of the statutory rights originating in the FACE Act through the "coverall" conspiracy against rights s... the FACE Act is punishable only as a misdemeanor in the circumstances of this case, while violation of § 241 is punishable by...

i

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

CERTIFICATE OF INTERESTED PERSONS....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT.........................................I

TABLE OF CONTENTS...............................................................................II

TABLE OF CITATIONS.............................................................................III

STATEMENT OF JURISDICTION................................................................V

STATEMENT OF THE ISSUE.......................................................................1

STATEMENT OF THE CASE.........................................................................2

      I. Course of the Proceedings and Disposition in the Court Below.....2

      II. Statement of the Facts...................................................................5

      III. Standard of Review.....................................................................5

SUMMARY OF THE ARGUMENT..................................................................6

ARGUMENT....................................................................................................7

     I.     WHETHER THE DISTRICT COURT ERRED IN DENYING THE MOTION TO DISMISS COUNT ONE BECAUSE THE FREE ACCESS TO CLINIC ENTRANCES (FACE) ACT, 18 U.S.C. § 248, GIVEN ITS OWN COMPREHENSIVE ENFORCEMENT SCHEME, IS NOT A "LAW OF THE UNITED STATES" WITHIN THE MEANING OF CONSPIRACY AGAINST RIGHTS STATUTE, 18 U.S.C. § 241 ............................................................ 8

        WHETHER THE DISTRICT COURT ERRED IN DENYING THE MOTION TO DISMISS COUNT ONE BECAUSE OF THE DISPARITY BETWEEN THE MISDEMEANOR PENALTY APPLICABLE TO VIOLATIONS OF THE FACE ACT, 18 U.S.C. § 248, AND THE 10-YEAR PENALTY AVAILABLE WHEN THE FACE ACT IS INCORPORATE INTO THE "COVERAGE" CONSPIRACY AGAINST RIGHTS STATUTE, 18 U.S.C. § 241 ...............................

CONCLUSION.................................................................................40

CERTIFICATE OF COMPLIANCE.................................................40

CERTIFICATE OF SERVICE...........................................................41

## TABLE OF CITATIONS

Cases                                                                    Page(s)

*Blessing v. Freestone*, 520 U.S. 329, 343 (1997).........................................17,19

*City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113 (2005)) ......3,20,21,23,24

*Fischer v. United States*,
603 U.S. __, 144 S. Ct. 2176 (2024)………………… 4,7,14,26,27,30-35,37-40

*Gonzaga University v. Doe*, 536 U.S. 273 (2002)...............................................17

*Health and Hospital Corp. of Marion County v. Talevski*,
599 U.S. __,143 S. Ct. 1444 (2023)......................................................21,22,24,25

*Middlesex County Sewerage Authority v. Sea Clammers*,
453 U.S. 1 (1981)...............................................................................................19

*Snyder v. United States*,
603 U.S. __, 144 S. Ct.1 9 4 7   ( 2 0 2 4 .)..,...................4,7,26,27,35-40

*United States v. DeLaurentis*, 491 F. 2d 208 (2nd Cir. 1974).......................11,23

*United States v. Johnson*, 390 U.S. 563 (1968)...............................................9,11

*United States v. Handy*, __ F. Supp. 3d ____, 2023 WL 4744057
at *3 (D.D.C. 2022)...........................................................................................37

*United States v. Pendergraft*, 297 F. 3d 1198 (11th Cir. 2002)...........................5

*United States v. Sharpe,* 438 F. 3d 1257 (11th Cir. 2006)..................................26

*United States v. Shotts*, 145 F. 3d 1288 (11th Cir. 1998)....................................6

*United States v. Steele*, 178 F. 3d 1230 (11th Cir. 1999).....................................6

Statutes

18 U.S.C. § 241……………………………………………………………P a s s i m

18 U.S.C. § 248……………………………………………………………P a s s i m

18 U.S.C. §1341……………………………………………………………… 5

28 U.S.C. §1291……………………………………………………………… V

42 U.S.C. §1983……………………………………………………………6 , -155

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

### I.

WHETHER THE DISTRICT COURT ERRED IN DENYING THE MOTION TO DISMISS COUNT ONE BECAUSE THE FREE ACCESS TO CLINIC ENTRANCES (FACE) ACT, 18 U.S.C. § 248, GIVEN ITS OWN COMPREHENSIVE ENFORCEMENT SCHEME, IS N UNITED STATES" WITHIN THE MEANING OF AGAINST RIGHTS STATUTE, 18 U.S.C. § 241

### II.

WHETHER THE DISTRICT COURT ERRED IN DENYING THE MOTION TO DISMISS COUNT ONE BECAUSE OF THE DISPARITY BETWEEN THE MISDEMEANOR PENALTY APPLICABLE TO VIOLATIONS OF THE FACE ACT, 18 U.S.C. § 248, AND THE 10-YEAR PENALTY AVAILABLE WHEN THE FACE ACT IS INCORPORATED INTO THE "COVER CONSPIRACY AGAINST RIGHTS STATUTE, 18 U.S.C. § 241

## STATEMENT OF THE CASE

I.    *Course of the Proceedings and Disposition in the Court Below*

Gabriella Oropesa was one of four defendants charged in the Middle District of Florida in a three-Count Superseding Indictment. (Doc. 54). Although her three codefendants were named in two substantive Counts charging violation of the Free Access to Clinic Entrances (FACE) Act, 18 U.S.C. § 248, Oropesa was charged (along with her codefendants) only in Count One, which alleged violation of the conspiracy against rights statute, 18 U.S.C. § 241. *Id*. Count One charged that Oropesa violated that statute, which unlike the FACE Act carries felony penalties in the circumstances of this case, by interfering with employees of facilities providing reproductive health services of their free exercise of the right to provide those services, a right secured by the FACE Act. *Id*. More specifically, in the manner and means section of the conspiracy alleged in Count One, Oropesa was alleged to have joined her codefendants to spray paint the exteriors of reproductive health service facilities in Hollywood and Hialeah, Florida, with messages, one of abortions aren't SAFE then niether (sic *Id*. at 34.

Five weeks after her March 30, 2023, arraignment (Doc. 68), Oropesa filed her motion to dismiss Count One. (Doc. 102). One of her arguments was that the FACE Act was not among the "laws of the in the conspiracy against rights statute, 18 U.S.C. § 241. *Id*. at 9-13. Looking to

Section 241's companion civil statute, Oropesa argued that a line of Supreme Court opinions established that, if the specific "law" sought to be incorporated into a comprehensive enforcement scheme, it may not also be additionally enforced through § 1983. *Id*. at 9-13 (discussing *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113 (2005)). Oropesa argued that the FACE Act has a markedly comprehensive enforcement scheme, and therefore any statutory right originating in the FACE Act may not also be enforced by incorporation into § 241. *Id*. at 9-13. She argued that this principle has even greater resonance for criminal statutes, where constitutional considerations of fair notice and avoiding vagueness are paramount. *Id*. at 12.

The government responded briefly in opposition to this argument. (Doc. 108 at 7, n. 3.) Instead, the government addressed not on whether the FACE Act provided a sufficiently comprehensive enforcement scheme that was incompatible with supplemental enforcement through § 241, but on another issue: whether the FACE Act "secured" a right that . . .[1] Oropesa also refers

---

[1] The pertinent text includes, ". . . if two or more persons conspire to injure . . . any person . . . in the free exercise or enjoyment of any *right* or privilege *secured* to him by the Constitution or *laws* of the United States . . . ." 18 U.S.C. § 241 (emphasis added). The government focuses on whether the law (here the FACE Act) secures a right; if so, it may be enforced under § 241. Oropesa, however, focuses on a different issue, namely the threshold question of whether the law (again, the FACE Act) itself has sufficiently comprehensive enforcement provisions. If so, the government is not permitted to use the FACE Act, and any rights that emanate from it, as a foundation for a § 241 charge.

reply reiterated that her argument was instead that, applying the analysis developed

in § 1983, the FACE Act was sufficiently comprehensive. (Doc. 118). The district

c o u r t   d e n i e d   O r o p e s a ' s   m o t i o n   t o   d i s m i s

Oropesa filed her renewed motion to dismiss based on the recent Supreme

Court cases *Fischer v. United States*, 603 U.S. __, 144 S. Ct. 2176 (2024), and

*Snyder v. United States*, 603 U.S. __, 144 S. Ct. 1947 (2024). (Doc. 238). She argued

that the same rationale of these cases applies here. *Id*. at 1. *Fischer* and *Snyder,* she

a r g u e d ,   r e j e c t   t h e   g o v e r n m e n t ' s   r e l i a n

p r o s c r i b i n g   c o n d u c t   w h e r e   C o n g r e s s   h a s

specific conduct. *Id.* In so doing, *Fischer* and *Snyder* compare the respective

penalties applicable to the broad and specific statutes. *Id.* When the specific statute

applies the less severe penalty, then the government is not free to prosecute a

defendant for violating the more general statute. *Id*. Oropesa argued that *Fischer* and

*Snyder* bar the government, therefore, from prosecuting her for a felony (with a 10-

year maximum sentence) under the coverall statute, § 241, when violation of the

specific statute, § 248, is punishable merely as a misdemeanor. *Id.* In its response,

the government argued that *Fischer* and *Snyder* do not apply. (Doc. 244) The district

c o u r t   d e n i e d   O r o p e s a ' s   r e n e w e d   m o t i o n   t

Oropesa was the only defendant who proceeded to trial, which lasted three

_____

days.  (Docs. 327, 329, and 332). The jury returned a guilty verdict on Count One,

Oropesa's only charge. (Doc. 335) On Ma

of the felony and sentenced to 120 days

was docketed on March 18, 2025 (Doc. 363), and Oropesa filed her notice of appeal

on March 20, 2025. (Doc. 365). On March 31, 2025, this Court designated this an

expedited appeal and set an expedited briefing schedule. (11th Cir. Doc. 4-1) On the

same day, Oropesa received instructions to report to the custody of the Bureau of

Prisons no later than April 29, 2025.

II.    *Statement of the Facts*

Other than the district court's two motions to

dismiss based on the insufficiency of the indictment, she does not raise any issues

regarding the district court's administ

sufficiency of the evidence. In the light most favorable to the government, the

evidence showed that Oropesa accompanied codefendants at two facilities charged

in the Superseding Indictment, a facility in Hollywood, Florida on May 28, 2022,

and another facility in Hialeah, Florida on July 3, 2022. (Doc. 54 at 3.) The exteriors

of the facilities were spray-painted with at least two threatening messages, as well

as with other text and drawings.

III.    *Standard of Review*

According to *United States v. Pendergraft*, 297 F. 3d 1198 (11th Cir. 2002), to

the extent a motion to dismiss raises the sufficiency of the indictment, it invokes a legal question that is reviewed *de novo*. *Id*. at 1204. The question of whether an indictment sufficiently alleges a statutorily proscribed offense is a question of law reviewed *de novo*. *United States v. Steele*, 178 F. 3d 1230, 1233 (11th Cir. 1999). Likewise, addressing whether a license statute, 18 U.S.C. § 1341, this Court in *United States v. Shotts*, 145 F. 3d 1288 (11th Cir. 1998) characterized the issue as a challenge to the legal sufficiency of the indictment, concluding that review was *de novo*. *Id*. at 1292-93.

## SUMMARY OF ARGUMENT

Count One is legally insufficient for two reasons. First, the conspiracy against rights charge, 18 U.S.C. § 241, provides here for a criminal cause of action in the event of violation of a "right" that is "secured" by the term "law" here. Very little caselaw exists in Section 241. However, § 241 has a heavily litigated civil counterpart, 42 U.S.C. § 1983, which also adopts the same three statutory terms, that is, enforcing a "right" that is "secured" by a "law." The parties agree law as a tool in interpreting the same dismiss, she focused on the term that not all laws. "laws" can be enforced through § 1983. comprehensive enforcement schemes cannot be enforced through § 1983. The Free

6

Access to Clinic Entrances (FACE) Act criminal cause of action, and three civil causes of action and multiple remedies. Accordingly, the FACE Act is not among term in § 241.

Count One is also legally insufficient under the authority of *Fischer v. United States*, 603 U.S. __, 144 S. Ct. 2176 (2024), and *Snyder v. United States*, 603 U.S. __, 144 S. Ct. 1947 (2024). In *Fischer* and *Snyder*, the Supreme Court, addressing interrelated obstruction of justice statutes, as a matter of statutory construction held that the government is not authorized to prosecute individuals for violating a criminal statute proscribing conduct generally when another criminal statute is available that proscribes the defendant's specific con general, "coverall" statute pr*Fischer* and *Snyder* here, the government is not authorized to prosecute Oropesa for the more generalized, "coverall" conspiracy agai the more specific FACE Act. This result follows particularly because § 241 carries, in this case, a maximum felony penalty of 10 years, while a violation of the FACE Act is merely punishable as a misdemeanor.

## ARGUMENT

### I.

WHETHER THE DISTRICT COURT ERRED IN DENYING THE MOTION TO DISMISS COUNT ONE BECAUSE THE FREE ACCESS TO CLINIC ENTRANCES (FACE) ACT, 18 U.S.C. § 248, GIVEN ITS OWN COMPREHENSIVE ENFORCEMENT SCHEME, IS NOT A "CONSPIRACY ... UNITED STATES" WITHIN THE MEANING OF THE CONSPIRACY AGAINST RIGHTS STATUTE, 18 U.S.C. § 241

I. *The Statutory Framework:  The FACE Act and Section 241*

Again, Gabriella Oropesa and three codefendants, Caleb Freestone, Amber Smith-Stewart, and Annarella Rivera, were named in a three-Count Superseding Indictment returned March 22, 2023. (Doc. 54) Counts Two and Three charged Oropesa's codefendants—but not Oropesa—with violating, on June 26, 2022, 18 U.S.C. § 248, the Free Access to Clinic Entrances (FACE) Act. More specifically, Count Two alleged a violation of 18 U.S.C. § 248(a)(1), which prohibits intimidating or interfering with any person obtaining or providing reproductive health services. *Id.* at 4. Count Three alleged a violation of 18 U.S.C. § 248(a)(3), which prohibits damaging or destroying the property of a facility providing reproductive health services.[2] *Id.* at 4-5.  As charged, both offenses are punishable as misdemeanors. *See* 18 U.S.C. § 248(b)(1).

This appeal involves only Count One. All four defendants, including Oropesa,

---

[2] Counts Two and Three also charged these defendants with violating 18 U.S.C. § 2, that is, aiding and abetting, and Count One likewise charged all four defendants with violating § 2 along with 18 U.S.C. § 241.

were named in that Count, which alleged conspiracy against felony rights" in violation. *Id.* at 1–4. According to 18 U.S.C. § 241, in § 241 its entirety,

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any *right or privilege secured* to him by the Constitution or *laws of the United States*, or because of his having so exercised the same; or

> If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured[3] –

> They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 241 (emphasis added).[4]

In simple terms, then, Section 241 cr or privilege" that is "secured" by a "l

---

[3] Discussing the historical origins of this statute in *United States v. Johnson,* 390 U.S. 563 (1968), the Supreme Court observed that § 241 is derived from the Reconstruction-Era Enforcement Act of 1870, and noted that the defendants in *Johnson*, private citizens accused of violently denying Black citizens access to a public restaurant, were "hoodlums opera *Id.* at 565-66.

[4] The terms "privilege," "right," "secured," and especially "laws of the United States" are italicized because they are of statutory construction.

9

FACE Act. Oropesa's contention most of to the govern characterization in the court below - that the FACE Act fails to secure a right or privilege. Instead, Oropesa's contention (that is, 124 years after the 1870 passage of § 241), Congress enacted a law that established an elaborate and comprehensive enforcement scheme, thereby establishing it as the exclusive means privileges" secured by the FACE Act "

Tracking the language of § 241, Count One, the only Count with which Oropesa was charged and convicted, alleges that she and her codefendants conspired "to injure, oppress, threaten, and int reproductive health services in the free exercise and enjoyment of the *rights and privileges secured* to them by the *laws of the United States*, namely, the right to provide and seek to provide reproductive health services as provided by Title 18, United States Code, Section 248(c)(1), in violation of Title 18, United States Code, Section 241." (Doc. 54 at 2) (emphasi Section 241, Oropesa was charged with the felony offense of conspiring to violate "rights and privileges" "secured" by a specific "law," Section 248(c)[5] of the FACE

_____

[5] More specifically, Count One charges that these rights and privileges are secured by a specific subsection of the FACE Act, namely one of its three civil provisions, 18 U.S.C. § 248(c)(1). Section 248(c)(1), in turn, provides in pertinent part that,

Act.  The government charged Oropesa with a felony under this novel theory despite the FACE Act's own criminal penalty section, which in the circumstances of this case would be only misdemeanor sanctions.  *See* 18 U.S.C. § 248(b)(1). The government candidly acknowledged that specifically analyzing whether a civil statute creates a federal right enforceable under Section 241." (Doc. 108 at 6) (Oropesa's motion to dismiss).

Well before trial, Oropesa moved to dismiss Count One. (Doc. 102).  She acknowledged that violation of 18 U.S.C. § 241 requires proof of interference with a right or privilege secured by the laws of the United States. However, she argued, because the FACE Act contains its own comprehensive enforcement scheme prescribed by Congress, that includes criminal penalties, any right or privilege that is secured by the FACE Act may not also be enforced through the open-ended,

---

Any person aggrieved by reason of subsection (a) [which identifies certain "prohibit," *see infra*] may commence a civil action for the relief set forth in subparagraph (B) [i.e., injunctive, compensatory, and punitive relief, and fees and costs], except that such an action may be brought ... only by a person involved in providing or seeking to provide, or obtaining or seeking to obtain, services in a facility that provides reproductive health services....

18 U.S.C. § 248(c)(1).

[6] The government cites *United States v. Johnson, supra*, and *United States v. DeLaurentis,* 491 F. 2d 208 (2nd Cir. 1974). But *DeLaurentis* held that § 241 could not be used to enforce a civil statute. *Id*. at 214. *See discussion, infra.*

catchall "laws of the United States" of § 241. Under

theory, the entire United States Crimi

States, would be enforceable under § 241.  The only possible limiting principle

would be the law in question must secure a right or privilege. Because it is difficult

to imagine a law that fails in some sense to secure a right or privilege, in practical

terms this is no meaningful limitation at all.

Because it contains a sufficiently comprehensive and independent

enforcement scheme which, again, includes criminal penalties, the FACE Act is not

among the "laws of the United States" t

felony criminal remedy appearing in 18 U.S.C. § 241. In short, the structure of the

FACE Act reveals an elaborate enforceme

to preclude other remedies.

Even a brief review of the provisions of the FACE Act reflects just how

comprehensive its enforcement scheme is.  The 1994 Act first identifies certain

"prohibited activities," and provides

"shall be subject to the [criminal] pen

remedies provided *See* 18 U.S.C. Section 248(c)."

activities" — which are the precisely charged

codefendants as criminal offenses in Counts Two and Three of the Superseding

Indictment - are found in 18 U.S.C. §§ 248(a)(1) and (3).[7]

The first of these relevant "prohibited activities" "Whoever by force or threat of force, or by physical obstruction, intentionally injures, intimidates, or interferes with any person because that person is or has been, or in order to intimidate such person or any other person or any other person or any class of persons from, obtaining or providing re *See* 18 U.S.C. § 248(a)(1). This "prohibited activity" i Oropesa's conduct in Count Two (Doc. 54 at 4). The second relevant "prohibited activity" provides, "Whoever property of a facility, or attempts to do so, because such facility provides reproductive *See* 18 U.S.C. § 248(a)(3). Th health services is the basis for the misdemeanor charge Three. (Doc. 54 at 4-5)

The comprehensive enforcement scheme of the FACE Act provides that commission of these "prohibited activities" one criminal and three civil. First, the United States can enforce the Act criminally

---

[7] The third and final "prohibited activit to this case, is found in § 248(a)(2), and apply by force to any threat of force or by physical obstruction, intentionally injures, intimidates or interferes with ... any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C 248(a)(2).

under 18 U.S.C. § 248(b), as it specifi

– but not Oropesa - in Counts Two and Three. Second, a private person aggrieved

by the commission of a prohibited activity may bring a civil action under 18 U.S.C.

§ 248(c)(1).[8] Third, the United States may bring a civil action under 18 U.S.C. §

248(c)(2).  Fourth, any state attorney general may bring a civil action under 18

U.S.C. § 248(c)(3).[9]

It is this comprehensive, multiple-remedy statutory scheme that demonstrates

Congress' intent in 1994 to rely exclusively on the tools provided in the FACE Act

to remedy the ills the statute identifies, rather than to authorize the Executive Branch

to fill any perceived gaps in the prosecutorial toolbox by relying on the 1870 civil

rights conspiracy statute and its felony penalties. As the Supreme Court recently

recognized in *Fischer*, *supra,* deference to afford the proper respect to legislature

'the prerogatives of Congress' in carrying out the quintessentially legislative act of

defining crimes and setting the penalties for them.  " 144 S. Ct. at

---

[8] Again, this specific subsection, § 248(c)(1), is the only law the government identifies as having secured the right or privilege that is alleged to have been violated in Count One. (Doc. 54 at 2). Incidentally, Oropesa and her codefendants were sued under this subsection in a private civil action. *See* a                    (    ( g              8 *Revenge, et al*., Case No. 8:23-cv-705-KKM-AAS (M.D. Fla. 2023) (Mizelle, J.).

[9] The Attorney General of Florida pursued this relief against Oropesa and her codefendants in *Moody v. Freestone, et al*., Case No. 8:23-cv-701-SDM-MRM (M.D. Fla. 2023) (Merryday, J.). Thus, of the four remedies available in the FACE Act, the only one that has not been sought against Oropesa and her codefendants is a civil action by the United States.

omitted).

> *II. The Comprehensiveness of the FACE Act* ( W ( o
> *Precludes Supplemental Reliance on Section 241*

Reflecting the novelty of the governr

case, there are no binding opinions addressing the issue whether, in the language of

§ 241, a right secured by a law like the FACE Act can be enforced criminally by 18

U.S.C. § 241. This identical issue, however, has been repeatedly addressed in the

Supreme Court's 42 U , which has established a critical jurisp

limiting principle that should have an even greater bearing in criminal cases brought

under § 241.

The operative language of Section 1983 is materially identical to Section 241.

While Section 1983 provides a civil cau

or immunities secured by the Constituti

a criminal charge to enforce "any right or privile

laws Both" statutes, then, are built on th

a "right" that can be enforced through

The parties largely addressed different issues, but both parties recognized the

usefulness of caselaw under § 1983. Th

are relatively few cases considering whether a civil rights statute creates a right

enforceable under Section 241, it is helpful to examine the law that has developed

under 42 U.S.C. § 1983." (Doc. 108 at

Relying on this § 1983 case law, the government thoroughly briefed the question of whether the FACE Act "secured" a "rig[ht]"... contended that Count One was a proper use of § 241.

But Oropesa's motion to dismiss did... motion addressed the threshold issue of whether the FACE Act was an appropriate statutory basis for a § 241 action in the first place. Whether the FACE Act secures a right or not is irrelevant. Like the government, Oropesa looked to an established principle in the Supreme Court's § 1983... the foundational "law" incorporates its... sufficiently comprehensive to preclude the government... Supreme § 1983 jurisprudence establishes that a... comprehensive enforcement scheme cannot, in addition, be enforced through the cause of action provided by § 1983. The purpose of this critical limiting principle, developed in the much more active civil authority associated with § 1983, has even more resonance for a criminal statute like § 241, given the enhanced importance of fair notice and the need to avoid vagueness. It is Congress, and not the Executive, that has the exclusive constitutional authority to define crimes.

Again, Oropesa's is directed not to whether the FACE Act secures a right. Instead, she argues that, whether the FACE Act secures a right or not, the FACE Act is not, at the threshold, a "law of the United States" that seems...

in § 241.  Relying on § 1983 authority interpreting the same operative statutory

language, her argument is that because of its comprehensive nature, the FACE Act

it is not among the "laws of the United

In short, the FACE Act is adequately self-executing. Oropesa contends that the

comprehensive enforcement scheme established in the FACE Act itself precludes

the government's effort to enforce, as

violation of the rights and privileges secured by the same FACE Act. This is because

of a markedly comprehensive enforcement scheme that provides its own criminal

penalty section, along with three categories of civil actions that may be brought

private persons, the federal governme

respectively.

In the district court, the government focused on the meaning of the term

"rights and pri[10] as used in both § 241 and § 1983. Yet, Oropesa's argu

focuses not on whether the FACE Act se

241, but whether it is, at the threshold, a "law" enforceable under

According to the Congressional Research Service in a paper addressing

---

[10] Incidentally, the Supreme Court has li
can be enforced by Section 1983. *See Blessing v. Freestone*, 520 U.S. 329, 343
(1997) (holding that Title IV-D of the Social Security A
*Gonzaga University v. Doe*, 536 U.S. 273, 287 (2002) (holding that Family
Educational Rights and A pending Supreme Court is n
case addresses this issue as well. *See Medina v. Planned Parenthood Atlantic* (No.
23-1274) (argued April 2, 2025).

Section 241's substantive counterpart, 18 U.S.C. § 242,

> A defendant may violate Section 242 ... rights, privileges, or immunities se ... "laws of the United States" or the Co ... of the United States ... brought Section 242 ... unclea ... charges in recent history based solely on statutory violations. In the analogous context of civil claims under Section 1983, courts have shown reluctance to imply a civil remedy for statutory violations; the courts may be even less likely to impose criminal liability under statutes that do not expressly provide for it.

Congressional Research Service, "Federa ... Violations Under 18 U.S.C. § 242," p. 2 ...

(Available at: crsreports.congress.gov/crs-product/LSB10495.)

As the above Congressional Research Service article notes, the Supreme Court has limited the use of § 1983, the civil analogue to § 241, to enforce statutory, in contrast to constitutional, rights. To date, there is no Supreme Court or Circuit Court of Appeals authority resolving the question of whether and if so, in what circumstances § 241 may be used to enforce another federal statute like the FACE Act. But the standard ... such more extensive 42 U.S.C. Supreme ... § 1983 jurisprudence are helpful. The operative language of § 1983, adopted at the same post-Civil War period, is virtually identical to § 241 . . . . . " A rich l ... Court authority establishes that although § 1983 may be used to enforce some federal laws, that statute may not be used, without limitation, to enforce any "l ... United States. The Supreme Court has developed manageable standards and

constraints. Applying precisely the same standards and constraints in the criminal context, it is clear that § 241 cannot be used to enforce violations of the FACE Act.

In the context of construing the term "laws of t... in § 1983, the Supreme Court primarily e... enforced through §1983 contains its own sufficiently extensive enforcement scheme. If it does, the Court consistently holds, supplemental enforcement through §1983 is not available. In an early case, *Middlesex County Sewerage Authority v. Sea Clammers,* 453 U.S. 1 (1981), for instance, the Court held that, "... devices provided in a particular act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to...

*Id.* at 20. Noting that the two environmental statutes addressed in *Middlesex County* provided an array of remedies including government compliance orders, civil suits, civil and criminal penalties, and civil suits by private citizens, the Court found that § 1983 was unavailable as an additional enforcement tool. *Id.* at 13, 20. The Court concluded, "... that Congress ... intended to preserve the § 1983 remedy when it created so... *Id.* at 20 ... *Blessing* ... cited *supra* on the government's issue... of the whether... Social Security Act) secured a right, the Court also addressed Oro... reiterating that Congress can foreclose a Sec... creating a comprehensive scheme that is incompatible with individual enforcement

under §520 U.S. at 341."

Acknowledging that it previously held in *Middlesex County* that Section 1983 authorizes suits to enforce individual rights under federal statutes as well as the Constitution, the *City of Rancho Palos Verdes* Court observed that, "Our subsequent cases have made clear, however, that § 1983 does not provide an avenue for relief every time a state 544 U.S. at 119. According to the a fed Court, a defendant may demonstrate that Congress did not intend to create a remedy under §1983 for a statutory right by showing that the statute created a '"comprehensive enforcement scheme that enforcement *Id.* at 120 (quotation omitted). ' "

According to Justi *Rancho Palos Verdes* Court, opinio

> The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983. As we have said in a different setting, "[t]he express method of enforcing a provision of substantive rule suggests that Congr Thus, the existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held it would not.

*Id.* at 121 (quotation omitted). Further, the Court reasoned, '"[W]hen a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by *Id.* brin

(quotation omitted). Finally, "[I]n all

is available for violation of a federal statute, we have emphasized that the statute at

issue ... did not provide a private judicial remedy (or, in most of the cases, even a

private administrative *Id.* (emphasis in original) or the

Of course, § 1983 is a civil statute, and § 241 is a criminal statute. But *City of Rancho Palos Verdes,* interpreting the same "Constit

in § 241, limits the instances in which § 1983 may be used to enforce another statute.

Further, the constitutional considerations unique to criminal statutes, especially fair

notice and avoiding vagueness, would weigh more heavily against an expansive

interpretation of the "laws" language i

contains its own comprehensive enforcement scheme and provides its own criminal

penalties. It is, in the language of *City of Rancho Palos Verdes,* the more "res

remedy.

Clearly, the same can be said for the FACE Act. Its comprehensive

enforcement structure reflects congressional intent to preclude the additional remedy

of § 241. This is particularly true when Congress determined that criminal violations

of the FACE Act should be punished as misdemeanors, not as the felony penalties

the government seeks to impose by engrafting the FACE Act onto § 241.

In *Health and Hospital Corp. of Marion County v. Talevski*, 599 U.S. __, 143

S. Ct. 1444 (2023), the Court reaffirmed that the test is whether Congress has, in a

given statute, created a comprehensive enforcement scheme that is incompatible with enforcement through § 1983. 143 S. Ct. at 1459. The *Talevski* Court reasoned that the assessment of incompatibility requires a determination of whether there are any indicia of congressional intent to express private judicial right of action or any other provision that may signify that intent. *Id.* at 1460. More specifically, "The existence of a more restrictive private remedy [in the statute itself] for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have not." *Id.* (cleaned up) (brackets in that is original). The *Talevski* Court found that it had previously found that incompatibility exists with -contained enforcement schemes that included statute-specific rights of action. *Id.* at 1461. Moreover, in these specific right of action offered fewer benefits than the statute-and §1983 provided remedies that were unavailable under the specific statutes." *Id.*

This is precisely the problem created if the government were permitted to apply §241 and its felony penalties to punish a conspiracy to violate the FACE Act, which in the circumstances of this case provides only misdemeanor penalties.[11] In

---

[11] There is a readily available criminal conspiracy statute, 18 U.S.C. § 371, which avoids this problem by providing that a conspiracy to commit criminal conduct that is penalized only as a misdemeanor may also be penalized only as a misdemeanor. *See* discussion, *infra*.

the §1983 context, the Supreme Court disavows in the civil context the use of that statute to enforce "laws" that provide which Congress has authorized less extensive remedies. That concern is only more pointed in the criminal context, where the government faces additional constitutional barriers to seeking to use §241 to impose felony consequences for conduct that is explicitly punishable only as a misdemeanor by Congress in a specific statute, here the FACE Act. Under the Due Process Clause, use of § 241 to enforce the FACE Act creates significant void-for-vagueness and lack of fair notice defects.

This is not a case in which the FACE Act provides no criminal penalty; it does. But because the FACE Act, compared with § 241, is the more restrictive penalty, *Rancho Palos Verdes* compels the conclusion that the government may not rely on § 241. Congress determined that criminal violations of the FACE Act should, in the circumstances of this case, be penalized at most as misdemeanors. Here, the government seeks to create a much more severe felony penalty by applying § 241 to conduct that is specifically subject to a comprehensive enforcement framework deliberately chosen by Congress, with more restrictive penalties.[12]

---

[12] In *United States v. DeLaurentis*, 491 U.S. 208 (2d Cir. 1974), which is a  § 241 and not § 1983 case, the Second Circuit, well before even *Middlesex County* anticipated many of these same problems. In *DeLaurentis*, the government prosecuted three union members under § 241 for conspiring to intimidate union members in the free exercise of their rights, under the National Labor Relations Act, not to participate in union activity. *Id.* at 209. The court concluded that the rights specified in the Act "must be vi

The government argued in the district court that the FACE Act's "saving clause" means that citizens may face prosecution under Section 241 despite the FACE Act's comprehensiveness. (Doc. 349 at 5 & 7).[13] But this same identical "saving clause" argument has been rejected in the well-developed § 1983 context. In *Middlesex County*, *supra*, the Court reached the commonsense conclusion that the saving clause in an environmental statute only preserved the right to enforce standards arising under *other* statutes (and the common law) because § 1983 was simply a means of enforcing the same environmental statute, not an independent cause of action. 453 U. S. at 20, n. 1. In *Ranchos Palos Verdes*, *supra*, the Court reaffirmed *Middlesex County*, reasoning that the saving clause in the telecommunications statute in that case only preserved the availability of other statutes, and not Section 1983, again because the latter simply provided additional remedies for violation of the same statute. 544 U.S. at 126-27. In *Talevski*, *supra*, the Court reaffirmed the holdings in *Middlesex County* and City of *Rancho Palos Verdes* that a saving clause in a comprehensive statute did not preserve the

set forth in that Act and may not serve as the basis for prosecution under section 241. *Id.* at 211. The court rejected the notion that Congress could have intended that persons violating these statutory rights could be subject to a criminal penalty of as many as 10 years in prison. *Id.*

[13] Section 248(d)(3) provides that, "Nothing in this section shall be construed - to provide exclusive criminal penalties or civil remedies with respect to the conduct prohibited by this section, or to preempt State or local laws that may provide such penalties or remedies..." 18 U.S.C. § 248

Section 1983 remedy. 143 S. Ct. at 1462, n. 14.[14]

In sum, the Supreme Court rejects a reading of a saving clause to preserve the § 1983 remedy when § 1983 is invoked to enforce the same statute in which the saving clause is contained. This is particularly true when the statute sought to be enforced through § 1983 has its own robust enforcement scheme. This commonsense rule is even more compelling in the criminal context, where Congressional authority to define criminal conduct and, more important, to affix appropriate criminal punishments is entitled to heightened deference. Simply put, if Congress intended to impose a felony sanction for violating the FACE Act, it could have, and would have, said so.

Both parties in this case acknowledge that, given the paucity of § 241 jurisprudence, it is appropriate to consider the well-developed authority that has emerged in the § 1983 context. That authority demonstrates that neither § 1983 nor §241 is available when the foundational law, here the FACE Act, contains its own comprehensive enforcement scheme. The FACE Act provides one criminal cause of action, and three civil causes of action. Moreover, in terms of criminal sanctions the FACE Act provides the more restrictive penalty. For these reasons, the Superseding

---

[14] The *Talevski* Court held that, unlike the saving clauses in those two cases, the saving clause in the Federal Nursing Home Reform Act (FNHRA) did not preclude use of § 1983 for two reasons: 1) the other two savings clauses did not, unlike FNHRA's, preserve, "and 2) the other statues included private rights of action, unlike FNHRA. *Id.* at 1462, n. 14.

I n d i c t m e n t   w a s   i n s u f f i c i e n t ,   a n d   t h e   d i

R. Crim. P. 12(b)(3)(B)(v) motion to dismiss.

## II.

THE DISTRICT COURT ERRED IN DENYING THE MOTION TO DISMISS
COUNT ONE BECAUSE OF THE DISPARITY BETWEEN THE
MISDEMEANOR PENALTY APPLICABLE TO VIOLATIONS OF THE
FACE ACT, 18 U.S.C. § 248, AND THE 10-YEAR PENALTY AVAILABLE
WHEN THE FACE ACT IS INCORPORATED INTO T H E   " C O V E R A L L "
CONSPIRACY AGAINST RIGHTS STATUTE, 18 U.S.C. § 241

Oropesa filed a second motion to dismiss under Fed. R. Crim. P.

12(b)(3)(B)(v), on the authority of two recent United States Supreme Court opinions,

*Fischer v. United States*, 603 U.S. __, 144 S. Ct. 2176 (2024), and *Snyder v. United*

*States*, 603 U.S. __, 144 S. Ct. 1947 (2024). According to this Supreme Court

authority, she argued, Count One must be dismissed because, in the language of Rule

1 2 ( b ) ( 3 ) ( B ) ( v ) ,   t h e r e   i s   a   " d e f e c t "   i n

failure to state an offense. As the Eleventh Circuit noted in *United States v. Sharpe,*

438 F. 3d 1257 (11ᵗʰ C i r .   2 0 0 6 ) ,   " I n   r u l i n g   o n   a   m o t

an offense, a district court is limited to reviewing the face of the indictment and,

m o r e   s p e c i f i c a l l y ,   t h e   l a n g u a g e   u s e d   t o *Id.* at 1263.

Issued late last Term, *Fischer* and *Snyder* adopt a rule of statutory construction

that requires courts, when construing terms in federal criminal statutes, to grant

primary consideration to avoiding the risk of disparate punishments. Because

Section 241 imposes a penalty (in the circumstances of this case) of as many as 10 years' imprisonment for one who conspir but because the FACE Act imposes (in the circumstances of this case) a penalty of no more than one year's imprisonment, and, according to *Fischer* and *Snyder* the FACE Act cannot serve as a valid statutory predicate for section 241. Accordingly, Count One, the only count naming Oropesa, should have been dismissed for this reason as well.

In *Fischer* and *Snyder*, the Supreme Court rejected interpretations of two criminal statutes (addressing the offenses of obstruction of justice and receiving gratuities, respectively) because both proposals led to unacceptably disparate criminal punishments, contrary to the most reasonable construction of these criminal statutes. Simply put, after *Fischer* and *Snyder*, when courts interpret federal criminal statutes, penalties matter.

In this case, the government prosecuted Oropesa for violating an 1870 criminal conspiracy statute that impos imprisonment, but which relies on a substantive predicate statute, enacted in 1994, that imposes a maximum sentence of only use of both criminal statutes, and this unorthodox prosecutorial attempt to impose severe felony penalties under Section 241 for conspiring to commit a FACE Act misdemeanor is squarely disapproved by the rationales of *Fischer* and *Snyder*. Under

this Supreme Court authority, the gover

misdemeanants - 28 years after the 1994 enactment of the FACE Act - to severe

felony penalties, are no longer permissible.

The penalty provision of Section 241 provides that, for persons committing

the offense of conspiracy to violate civil rights,

> They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 241. Thus, § 241 carries four potential maximum sentences.  For Oropesa,

the penalties applicable to the offense charged in Count One establish a statutory

maximum of 10 years' imprisonment.[15]

Like the penalty structure in 18 U.S.C. § 241, the criminal penalties applicable

to violation of § 248(a)(1) of the FACE Act establish a series of progressively higher

statutory maximums corresponding either to increasingly aggravated conduct, to

recidivism, or to a combination of the two. The FACE Act's crimi

provision, Section 248(b), provides, in its entirety,

> (b) Penalties- Whoever violates this section shall –

---

[15] Based on progressively aggravated conduct, section 241 imposes three more severe maximum sentences than the 10-year maximum that applied to Oropesa: 1) imprisonment for "any term of years" and 3) (m the death penalty.

(1) in the case of a first offense, be fined in accordance with this title, or imprisoned not more than one year, or both, and

(2) in the case of a second or subsequent offense after a prior conviction under this title, be fined in accordance with this title, or imprisoned not more than 3 years, or both:

except that for an offense involving exclusively a nonviolent physical obstruction, the fine shall be not more than $10,000 and the length of imprisonment shall be not more than six months, or both, for the first offense; and the fine shall be, notwithstanding section 3571 [establishing maximum fines] be not more than $25,000 and the length of imprisonment shall be not more than 18 months, or both, for a subsequent offense; and except that if bodily injury results, the length of imprisonment shall not be more than 10 years, and if death results, it shall be for any term of years or for life.

18 U.S.C. § 248(b).

Thus, the criminal penalties applicable to violations of the FACE Act establish a series of seven progressively severe maximum sentences responsive to to aggravated conduct and recidivism. The lowest maximum sent imprisonment, applies to non-violent physical obstruction. Maximum sentences then range upward to one year's imprisonment imprisonment for second or subsequent convictions for non-violent physical obstruction, toment for second or subsequent convictions for so force (or threat of force), to 10 years' imprisonment in the and if death results, to life imprisonment, or death.

Thus, in the absence of any aggravated conduct or recidivism, offenders under

the FACE Act are subject to up to one y

imprisonment in the event of non-violent physical obstruction, as opposed to force

or threats of force, as proscribed in Section 248(a)(1)). Although Oropesa was not

charged in the Superseding Indictment with a substantive violation of the FACE Act,

it is clear from the conduct alleged in Counts Two and Three against her

codefendants that the conduct she allegedly conspired to commit would establish a

maximum penalty of one year's imprisonment, as there

of force, but no allegations of aggravated conduct or recidivism.

To summarize, Count One of the Superseding Indictment carries a statutory

maximum sentence of 10 years' imprisonment. The § 241

criminal section of the FACE Act, though, provides for first-time offenders like

Oropesa a maximum sentence other words, ay one

person convicted of a substantive violation of the FACE Act contemplates, at most,

one year in prison, but if convicted of conspiring to commit the same conduct, faces

up to 10 years in prison.

Because of the stark disparity between the maximum penalties provided by

the FACE Act and by Section 241, the rationales of *Fischer* and *Snyder* compel the

conclusion that the FACE Act is not a

enforceable through the 1870 civil rights conspiracy statute.

In *Fischer,* the Supreme Court adopted an approach to the construction of

federal criminal statutes that focuses on the maximum penalties a defendant faces, endorsing a rule that ambiguities in statutory language must be resolved in a way that results in the less severe penalty. In so doing, the *Fischer* Court severely curtailed prosecutorial discretion to seek, by its charging decisions, to expose citizens to inappropriately severe penalties.

At issue in *Fischer* was the meaning of a subsection of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1512(c)(2), which deals generally with obstruction of justice, and how that language should be interpreted in light of the preceding subsection, 18 U.S.C. § 1512(c)(1).  144 S. Ct. at 2181-82. The relevant statutory language is as follows:

> (c) Whoever corruptly –
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with integrity or availability for use in an official proceeding; or
>
> (2) *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined ... or imprisoned not more that 20 years, or both.

18 U.S.C. § 1512(c) (emphasis added).  So, all of the conduct embraced by (c)(1), the specific language, and the much less defined conduct captured by (c)(2), the expansive language, is all subject to a

Quoting this language, the *Fischer* Court reasoned that although the parties agreed that subsection (2) covers some matters not specifically contemplated by

subsection (1), the issue "is de...  *Id.* at

2183. The Court noted that Congress could have either, as the government argued,

criminalized all obstructive acts in (c)(2), while naming just a few examples in (c)(1),

or Congress could have criminalized the specific obstructive acts in (c)(1), and

instead used (c)(2) much less expansive...

exist." The Court rejected... expansive interpretation of (c)(2)... moment's

cover all types of obstruction of justice. *Id.* at 2190.

The *Fischer* Court identifies a fundamental problem with

expansive reading of § 1512(c)(2). According to the Court,

> The broader context of Section 1512 in the criminal code
> confirms that (c)(2) is limited by the scope of (c)(1). Federal obstruction
> law consists of numerous provisions that target specific criminal acts
> and settings. *See* 18 U.S.C. ch. 73. Much of that particularized
> legislation would be unnecessary if (c)(2) criminalized essentially all
> obstructive conduct, as the Government contends....[16]
>
> If the Government were correct, t...
> influences, or impedes an official... which is
> buried in subsection (c)(2) of Section 1512 – would largely obviate the
> need for that broad array of other obstruction statutes. In light of our
> obligation to give meaning where possible to each word and provision

---

[16] The Court provided a long list of examples: § 1503(a) (intimidation of jurors or court officers); § 1504 (written influencing of jurors); § 1505 (obstructing congressional investigations); §1507 (picketing in locations with intent to impede the administration of justice); § 1509 (obstructing performance of court-ordered duties); § 1510 (obstructing federal investigations through bribery); § 1511(a) (obstructing state and local enforcement to facilitate gambling); and §§ 1516, 1517, and 1518 (obstructing audits, financial examinations, and healthcare-related investigations).

in the Code, our narrower interpretation of subsection (c)(2) is the superior one.

*Id.* at 2187 (citation omitted; emphasis added).

In addition to the need to consider the whole of the federal criminal code, imparting meaning to each word and provision whenever possible, the *Fischer* Court also emphasized the necessity of consid[ering] different categories of criminally obstructive conduct, and more important, Congress' assessment of the appropriate penalty to be applied to each category of criminal conduct. The Court reasoned,

> An unbounded interpretation of subsection (c)(2) would also render superfluous the careful delineation of different types of obstructive conduct in Section 1512 itself. That section provides a reticulated list of nearly two dozen means of committing obstruction, with varying degrees of culpability and penalties ranging from three years to life in prison, or even death. Section 1512(a)(2)(B)(iv), for example, authorizes up to 30 years' [imprisonment for one who] uses or attempts to use physical force against another person with the intent of causing him to be absent from an official proceeding. *See* § 1512(a)(3)(B)(ii) (specifying punishment). Section 1512(d)(1), by contrast, authorizes only three year[s' imprisonment for one who] harasses another person and thereby dissuades him from attending an official proceeding.
>
> *Reading (c)(2) to cover all forms of obstructive conduct would* [render superfluous these distinctions and make it difficult to know what penalty is] *appropriate for which offenses.* Most instances of these official acts would instead fall under subsection [(a)(2), which] provides a 20-year maximum term of imprisonment. Such a reading of subsection (c)(2) would lump together disparate types of conduct for which Congress had assigned proportionate penalties in (a)(2) and (d)(1).

*Id*. (emphasis added).

In the accompanying footnote, the Court rejected the government's argument that although subsection (c)(2) carries a 20-year statutory maximum, but no minimum mandatory sentence, a prudent exercise of prosecutorial and judicial discretion could reliably avoid the possibility of a defendant receiving an inappropriately severe sentence. *Id.* at 2187, n. 2. According to the Court, "Congress might have thought (c)(2) prohibited conduct of varying severity. But it does not follow that it designed (c)(2) to reach forms of conduct already covered in Chapter 73 with far lower maximum sentences. It would be improper to substitute for those fine-grained statutory distinctions the charging discretion of prosecutors and the sentencing discretion of district courts." *Id.*

The *Fischer* Court then observed that its usual approach in obstruction cases is to avoid reading particular subsections. *Id.* at 2189. "Nothing in the text or statutory history to impose up to 20 years' imprisonment [on people] [who obstruct] obstruction of justice in any way and who might be subject to lesser penalties under more specific obstruction laws." *Id.* (emphasis added). The *Fischer* Court concluded that instead of interpreting self-fulfilling all (c)(2) obstruction of justice, it must read the (c). *Id.* As the Court explained,

Doing so affords proper respect to "[Congress in] carrying out the *quintessentially legislative act of defining crimes and setting the penalties for them.* We have long recognized t[hat the power] of punishment is vested in the legislative, not in the judicial department," and "we as well as lay exercise caution in assessing the reach of a federal c[rime]... reading of Section 1512 would intrude on that deliberate arrangement of constitutional authority over federal crimes, giving prosecutors broad discretion to seek a 20-year maximum sentence for acts Congress saw fit to punish only with far shorter terms of imprisonment.

*Id.* at 2189-90 (quotations omitted; emphasis added).

Two days before *Fischer*, the Supreme Court in *Snyder v. United States*, 603 U.S. __, 144 S. Ct. 1947 (2024), also looked to disparate statutory penalties as a vital tool for construing a federal criminal statute. At issue in *Snyder* was whether 18 U.S.C. § 666 criminalized the receipt of only bribes, or the receipt of both bribes and gratuities. *Id.* at 1951. The statute "makes it a cr[ime]... 'corruptly' solicit, accept, or agree [to accept]... intending to be influenced." *Id.* (quoting § warde... 666(a)(1)(B). Id. The *Snyder* Court concluded that the statute reaches only bribes that are given or promised before an official act, not gratuities given after an official act. *Id.*

The Court listed six reasons for its conclusion. Id. at 1954. Presaging the heart of *Fischer*'s holding, *Snyder*'s reason four, most on point here, is the matter of unacceptably disparate "statutory... penalties." *Id.* at 1956. Here, the *Snyder* Court compared the single 10-year maximum punishment applying to Section 666, which

again applies only to state and local officials, with the statutory punishments that apply to federal officials in the same circumstances. *Id.* The statute applying to federal officials, *Snyder* noted, establishes a 15-year maximum sentence for accepting a bribe, but merely a 2-year maximum sentence for accepting a gratuity. *Id., citing* 18 U.S.C. §§ 201(b) & (c). According to the *Snyder* Court,

> If the Government were correct that § 666 also covered gratuities, Congress would have created an entirely inexplicable regime for state and local officials. For one, even though bribery has been treated as a far more serious offense, Congress would have authorized the same 10-year maximum sentences for (i) gratuities to state and local officials and (ii) bribes to state and local officials. In addition, Congress would have authorized punishing gratuities to state and local officials five times more severely than gratuities for federal officials – 10 years for state and local officials compared to 2 years for federal officials.

*Id.* (citation omitted). Simply stated, " Congress would have created such substa[^17]

The government does not dispute the insert the text of the FACE Act of 1994 into Section 241, enacted in 1870.  In

---

[^17]: The *Snyder* Court added, " We cannot readily a 2-year sentence for, say, a Cabinet Secretary who accepts an unlawful gratuity while authorizing a 10-year sentence on a local school board member who accepts an identical gratuity. What sense would that make? In short, the inexplicable anomalies ushered in by the Government' 666 is a brib'Sobertyoostiastuite.a"n " inexplicabl government sought in this case, to punish a substantive offense as a misdemeanor and a conspiracy to commit that offense as a felony punishable by as many as 10 years in prison.

hundreds of FACE Act prosecutions- brou[...]

year history, the United States never attempted this prosecutorial experiment, and

this case is one of only four such prosecutions, all brought in the last three years.[18]

None of these test cases have reached the appellate level, and none have yet

addressed the effects of *Fischer* and *Snyder*.

After *Fischer* and *Snyder,* the only question is whether the FACE Act, which

permits a penalty of no m[ore] [t]ha[n] [a] [S]e[c]t[io]y

"laws of the United States," when that [...]

years' impr[is]o[n]me[n]t[.] [F]or [a]n[swer to that question,] the holdings of *Fischer* and *Snyder*

require courts to consider the penalties that would apply.

The *Fischer* Court squarely rejects the gove[...]

citizens for violati[o]n—[li]ke [18] [U].[S].[C]. [§] [1]5[1]2[(c)](2) in cover[...]

that case and Section 241 here - that create enhanced penalties for the same conduct

that Congress chose to penalize less severely with specific statutory language.

According to *Fischer*, "Nothing in the text or st[...]

subsection (c)(2)[19] is designed to impose up to 20 y[...]

---

[18] The United States does not dispute either fact. *See also United States v. Handy,* __ F. Supp. 3d ____, 2023 WL 4744057 at *3 (D.D.C. 2022) (noting that the first such effort to prosecute the FACE Act through § 241 did not occur before 2022).

[19] The government does not identify any suggestion in the text or statutory history of Section 241 or the FACE Act t h a t reflects Cong-yearss's i[...]

all defendants who commit obstruction of justice in any way and who might be subject to lesser penalties under more 2189.

The full limits on the "laws of the still unsettled. After Fischer and Snyder, though, what is now settled is that, as compelled by basic separation of powers principles, the government may not create a "covert statute that increases, by a fac has attached to specific conduct it has deemed criminal. In sum, the FACE Act is not a valid predicate for Section 241.

Finally, the fact that the FACE Act includes no conspiracy provision does not support the government's *Fischer* and *Snyder*. The on § 2 most reasonable explanation for the omission is that this reflects a deliberate legislative choice. In other words, Congress deliberately chose to reserve criminal punishment – as a misdemeanor - for only substantive, not inchoate, crimes. Accordingly, the novel creation of a conspiracy offense for the FACE Act by resorting to Section 241 squarely violates congressional intent and is impermissible for that reason alone.

But even assuming for a moment that the government may look elsewhere in

---

penalty by charging violation of § 241 when the specific statute carries penalty of no more than one year.

the United States Code for authority to charge a conspiracy to violate the FACE Act, one is readily available. And more important, it avoids the fatal defect identified in *Fischer* and *Snyder*. The general criminal conspiracy statute, 18 U.S.C. § 371, provides for a maximum sentence of five commit any offense against the United States but also provides, "If, however offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such a conspiracy shall not exceed the maximum punishment provided for such misdemeano the civil rights conspiracy statute, Section 371, the residual conspiracy statute, avoids the problem remedied in *Fischer* and *Snyder*. Section 371 provides achieves the goal of proportionality by penalizing a conspiracy to commit a misdemeanor not as a felony, but as a misdemeanor.

The Supreme Court's *Fischer* and *Snyder* opinions adopt an approach to statutory construction that focuses primarily on avoiding unwarranted sentencing disparities. The *Fischer* Court, especially, defers authority both to define federal criminal offenses, and to determine the appropriate punishment assigned to criminal conduct. 144 S. Ct. at 2189. Accordingly, the judicial branch "determining the reach of federal criminal restraint" statutes. Id. The *Fischer* Court expressly rejected the interpretation, advanced by the government, of a federal criminal statu

discretion to seek a 20-year maximum sentence for acts Congress saw fit to punish only with far shorter terms of imprisonment. *Id.* at 2189-90.

Substitute the 20-year maximum in *Fischer* with the 10-year maximum penalty of Section 241, and this is precisely the power the government seeks to exercise in this case. *Fischer* and *Snyder* disavow it. Accordingly, the district court erred in denying Oropesa's second motion to dismiss Count One as insufficient.

## CONCLUSION

Accordingly, Oropesa submits that this case should be remanded with instructions to the district court to dismiss Count One with prejudice.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because this brief contains 11,057 words, excluding the pages of the brief exempted by FRAP 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this brief has been prepared in proportionally spaced typeface using WORD 2024 in 14-point Times New Roman font.

/s/ Matthew Farmer
Counsel


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically to the following on the 11th day of April, 2025:

AUSA Emily C. L. Chang
Emily.chang@usdoj.gov

AUSA Noah B. Bokat-Lindell
Noah.Bokat-Lindell@usdoj.gov


/s/ *Matthew Farmer*
COUNSEL