# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

————————

No. 25-10928

————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

GABRIELLA OROPESA,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Middle District of Florida
Tampa Division
Case No.: 8:23-cr-25-VMC-AEP-4
Virginia M. Hernandez Covington, Senior United States District Judge

————————

## PETITION FOR
## <u>REHEARING EN BANC</u>

Matthew P. Farmer, Esq.
Farmer & Fitzgerald, P.A.
800 W. De Leon St.
Tampa, FL 33606
Mattfarmer1@aol.com
(813) 228-0095; FAX (813) 224-0269

Counsel for Appellant

December 22, 2025

i

<u>STATEMENT OF COUNSEL</u>

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves questions of exceptional importance on an issue of first impression:

Given its own comprehensive criminal enforcement scheme and misdemeanor penalties,[1] is the 1994 Free Access to Clinic Entrances (FACE) Act, 18 U.S.C. § 248, among the "laws of the United States" that may be enforced as a predicate for a felony prosecution under the 1870 conspiracy against rights statute, 18 U.S.C. § 241? Should the Supreme Court's limiting principles that have emerged in the context of 42 U.S.C. § 1983 when interpreting the same statutory language in both statues – that is, whether a "law of the United States" "secures" a "right" – have equal effect on its criminal counterpart, 18 U.S.C. § 241?


/s/ *Matthew Farmer*
ATTORNEY OF RECORD FOR
APPELLANT GABRIELLA OROPESA

---

[1] Although the FACE Act also contains felony penalties, Ms. Oropesa was convicted of a felony conspiracy to commit substantive conduct that is itself punishable only as a misdemeanor. *See* 18 U.S.C. §§ 248(a)(1), (3) & (b)(1) (providing for not more than one year's imprisonment for either: 1) using a threat of force to injure, intimidate, or interfere with a person from providing reproductive health services; or 2) damaging the property of a facility providing reproductive health services.)

i

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

STATEMENT OF COUNSEL ...............................................................i

TABLE OF CONTENTS.....................................................................ii

TABLE OF CITATIONS......................................................................1

STATEMENT OF THE ISSUES MERITING

     EN BANC CONSIDERATION...........................................................2

STATEMENT OF THE COURSE OF THE PROCEEDINGS AND

     DISPOSITION OF THE CASE...........................................................3

STATEMENT OF FACTS NECESSARY TO ARGUMENT

     OF THE ISSUES...............................................................................12

ARGUMENT AND AUTHORITIES..................................................13

CONCLUSION...................................................................................18

CERTIFICATE OF SERVICE............................................................18

## TABLE OF CITATIONS

Cases                                                                          Page(s)

*Alexander v. Sandoval*, 532 U.S. 275 (2001)..................................................6

*City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113 (2005)
..................................................................................4,6,7,9,1,13,14,16,17

*Fischer v. United States*, 603 U.S. 480 (2024)......................................... ...5

*Gonzaga University v. Doe*, 536 U.S. 273 (2002).......................................8

*Health and Hospital Corp. of Marion County v. Talevski*,
599 U.S. 166 (2023)..................................................................................8,13

*Maine v. Thiboutot,* 448 U.S. 1 (1980)......................................................17

*Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357,
145 S. Ct. 2219 (2025)................................................................ ......8,9,14

*Middlesex County Sewerage Authority v. Sea Clammers,*
453 U.S. 1 (1981)...............................................................................7,13-17

*Smith v. Robinson*, 468 U.S. 992 (1984)......................................................7

*United States v. Handy*, __ F. Supp. 3d ____, 2023 WL 4744057
at *3 (D.D.C. 2022)............................................................................ .......15

*United States v. Oropesa*, 159 F. 4th 912 (11th Cir.
2025)...............................................................................4-11,13,16,17

*United States v. Price*, 383 U.S. 787 (1966)...................................5,10,16,17

## <u>STATEMENT OF THE ISSUE MERITING EN BANC CONSIDERATION</u>

Given its own comprehensive criminal enforcement scheme and misdemeanor penalties, is the 1994 Free Access to Clinic Entrances (FACE) Act, 18 U.S.C. § 248, among the "laws of the United States" that may be enforced as a predicate for a felony prosecution under the 1870 conspiracy against rights statute, 18 U.S.C. § 241? Should the Supreme Court's limiting principles that have emerged in the context of 42 U.S.C. § 1983, when interpreting the same statutory language in both statues – that is, whether a "law of the United States" "secures" a "right" – have equal effect on its criminal counterpart, 18 U.S.C. § 241?

## STATEMENT OF THE COURSE OF PROCEEDINGS
## AND DISPOSITION OF THE CASE

Gabriella Oropesa was one of four defendants charged in March 2023 in the Middle District of Florida with violation of the felony conspiracy against rights statute, 18 U.S.C. § 241, with the alleged predicate offense charged a violation of the Free Access to Clinic Entrances (FACE) Act, 18 U.S.C. § 248.   *Id*. A superseding indictment charged that Oropesa violated § 241, which unlike the FACE Act[2] carries felony penalties, by interfering with employees of facilities providing reproductive health services of their free exercise of the right to provide those services, a right secured by the FACE Act. *Id.* More specifically, in the manner and means section of the conspiracy alleged in Count One, Oropesa was alleged to have joined her codefendants to spray paint, after hours,  the exteriors of reproductive health service facilities in Hollywood and Hialeah, Florida, with messages, one of which was, "If abortions aren't SAFE then niether (*sic*) are you." *Id*. at 3-4.

Oropesa moved to dismiss. (Doc. 102). Her primary argument was that the FACE Act was not among the qualifying "laws" of the United States, as that phrase is contained in the conspiracy against rights statute, 18 U.S.C. § 241. *Id*. at

---

[2] Again, although the FACE Act also contains felony penalties, the substantive conduct Oropesa was charged with conspiring to commit is punishable only as a misdemeanor.

3

9-13. Looking to Section 241's companion civil statute, 42 U.S.C. § 1983, and its identical terms,[3] Oropesa argued that a line of Supreme Court opinions established that, if the specific "law" sought to be incorporated into a § 1983 cause of action carries its own comprehensive enforcement scheme, it may not also be additionally enforced through § 1983. *Id*. at 9-13 (discussing *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113 (2005)) (hereinafter, "*Abrams*").  She argued that this principle has even greater resonance for criminal statutes, where constitutional considerations of fair notice and avoiding vagueness are paramount. *Id*. at 12.

The district court denied Oropesa's motion to dismiss. (Doc. 144). Oropesa was the only defendant who proceeded to trial, and the jury returned a guilty verdict. (Doc. 335) On March 13, 2025, she was adjudicated guilty of the felony and sentenced to 120 days' imprisonment, which she has now served, and a term of supervised release. (Doc. 360). Oropesa appealed to this Court, which issued its published opinion affirming her conviction for violating 18 U.S.C. § 241. *United States v. Oropesa*, 159 F. 4th 912 (11th Cir. 2025).

---

[3] The pertinent text of § 241 provides, "If two or more persons conspire to injure .... any person ...in the free exercise or enjoyment of any *right* or privilege *secured* to him by the Constitution or *laws* of the United States..." 18 U.S.C. § 241 (emphasis added). Section 1983 employs almost identical language, as it prohibits the "deprivation of any *rights*, privileges, or immunities *secured* by the Constitution and *laws*...." 42 U.S.C. § 1983 (emphasis added).

In Part III.A of its opinion, the *Oropesa* majority addressed her contention that her conviction must be vacated because the government may not charge a conspiracy to violate the FACE Act through Section 241. *Id*. at 915.[4] The majority framed the issue as one of statutory construction, that is, the text of the 1870 Act. *Id.* Section 241, the majority reasoned, "reaches conspiracies to violate a 'right' secured by the 'laws of the United States.'" *Id*. at 916 (*quoting* 18 U.S.C. § 241). Relying primarily on *United States v. Price*, 383 U.S. 787 (1966), the *Oropesa* majority noted that the language of § 241 is "'plain and unlimited' and 'embraces *all* of the rights and privileges secured to citizens by ... *all* of the laws of the United States.'" *Id., quoting Price*, at 800 (emphasis added by *Oropesa* court). Because *Price* requires reading Section 241 with "'full credit to its language,'" and because the FACE Act is a federal law, the plain text of § 241 reaches the FACE Act. *Id., quoting Price*, at 806.

The majority correctly observes that "Oropesa ...  concedes that the FACE

---

[4]  In this petition for rehearing en banc, Oropesa seeks rehearing only on Part III.A of the opinion. Concurring, Judge Jordan did not join this section of the panel's opinion, reasoning that Oropesa's conviction should be affirmed instead because the FACE Act's saving clause would preserve the government's right to pursue prosecution under 18 U.S.C. § 241. *Id*. at 920 (Jordan, concurring). Oropesa addresses the saving clause issue below. Oropesa does not seek rehearing on a second challenge to her conviction based on *Fischer v. United States*, 603 U.S. 480 (2024), which all members of the panel assess in Part III.B of the Oropesa opinion. *Id.* at 918.

Act creates a right and is a 'law of the United States.'" *Id., quoting* § 241. Instead, the majority correctly notes that Oropesa's argument is, instead, that the FACE Act is not among the category of "laws of the United States" that could be enforced through § 241 because, although the FACE Act secures a right, it provides its own comprehensive enforcement scheme in which Congress has authorized "less extensive" penalties than those available under Section 241. *Id.* [5]

The majority correctly observes that Oropesa analogizes to caselaw limiting the extent to which 42 U.S.C. § 1983[6] – which has the same statutory language authorizing enforcement of '"any rights ... secured by the ... Constitution and laws'" – affords a private right of action to enforce violations of federal statutes. *Id., quoting* § 1983.  The *Oropesa* majority notes that one such limitation is that a defendant may show that the federal statute in question does not secure a "right." *Id.*[7] The second limitation noted by the majority is that a § 1983 defendant can

---

[5] For this argument, Oropesa relies on *Abrams*, which held that, because '"[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others'..., the existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not." 544 U.S at 121, *quoting Alexander v. Sandoval*, 532 U.S. 275, 290 (2001).

[6] Section 1983 was enacted in 1871 as a provision of the Civil Rights Act by the same Reconstruction Congress that enacted § 241 the previous year.

[7] Again, Oropesa has always acknowledged that the FACE Act clears this first hurdle.

rebut the presumption that a statutory right may be enforced against him if he demonstrates that Congress did not intend that remedy for a "newly created right." *Id., quoting Smith v. Robinson*, 468 U.S. 992, 1012 (1984),[8] and one way of showing Congress' lack of intent is showing that the statute creates a "'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Id., quoting Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 19-20 (1981) (hereinafter, *Sea Clammers*).

Noting that Oropesa's contention is that the FACE Act's comprehensive enforcement scheme likewise reflects Congress's intent to preclude additional enforcement through § 241 – observing, for example, that the FACE Act's penalties are more restrictive than the those available under §241[9] - the *Oropesa* majority nonetheless reasons that this Court has never suggested that a criminal statute containing its own penalties prevents prosecution under § 241 for a conspiracy to violate those same statutory rights. *Id.* at 917.

---

[8] The FACE Act was enacted in 1994.

[9] Here, the Court cites *Abrams*, 544 U.S. at 121. *Id.* at 917 & n. 4. Again, in this section of *Abrams*, the Supreme Court held, "[T]he existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we held it would not." 544 U.S. at 121. To reiterate, although the FACE Act contains felony penalties for aggravated conduct or recidivism, the specific conduct that Oropesa and her codefendants were alleged to have conspired to commit is punishable under the FACE Act only as a misdemeanor. *See* 18 U.S.C. § 248(b)(1).

7

The majority explains the reason is that "[o]ur caselaw limiting the scope of Section 1983 simply has no bearing on whether the FACE Act is among the 'laws of the United States' enforceable through Section 241." *Id.* (quoting statute). Relying exclusively on the recent Supreme Court case of *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 145 S. Ct. 2219 (2025),[10] the *Oropesa* majority reasoned, "In the Section 1983 context, the fact that a federal statute 'has displaced § 1983's general cause of action with a more specific remedy' is relevant to whether that 'statute secures an enforceable *right*,' not whether that statute is a 'law' to begin with." *Id., quoting Medina*, 145 S. Ct. at 2229 (emphasis added by *Oropesa* court.)[11]

---

[10] *Medina* was issued on June 26, 2025, after briefing in this case concluded, and Oropesa filed her FRAP 28(j) notice of supplemental authority, citing *Medina*, on June 27, 2025. (11th Cir. Doc. 42).

[11] Respectfully, the *Oropesa* majority misreads *Medina* in this regard. These two quotations from *Medina* originate at the beginning and the end of the same paragraph that Oropesa quoted in her FRAP 28(j) letter. The paragraph reads in full as follows:

> To prove that a statute secures an enforceable right, privilege, or immunity, and does not just provide a benefit or protect an interest, a plaintiff must show that the law in question "clearl[ly] and unambiguous[ly]" uses "rights-creating terms." [*Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 290 (2002)]. In addition, the statute must display '"an unmistakable focus' on individuals like the plaintiff. *Id*. at 284 (emphasis deleted); accord, [*Health and Hospital Corporation of Marion Cty. v. Talevski*, 599 U.S. 166, 183 (2023)]. We have described this as a "stringent" and "demanding" test. *Id*. at 180; accord, *post*, at 2250—2251 (JACKSON, J., dissenting) (describing *Gonzaga* as setting forth "a restrictive test"). *And even for the rare*

Continuing to rely on *Medina*, the *Oropesa* majority noted that the *Medina* Court identified the separation of powers considerations underlying limitations on private statutory actions through § 1983. *Id.*, *citing Medina*, 145 S. Ct. at 2229-30. A presumption against implied private causes of action brought through § 1983 requires either an express congressional provision of the remedy, or a clear implication from the text of the statute. *Id*. at 918, *citing* A. Scalia and B.A.

---

statute that satisfies it, this Court has said, a § 1983 action still may not be available if Congress has displaced § 1983's general cause of action with a more specific remedy. *Ranchos Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005).

*Medina*, 145 S. Ct. at 2229 (emphasis added). This passage in *Medina* highlights the two distinct hurdles a plaintiff must clear to demonstrate that a federal statute can be enforced through § 1983. The first – which Oropesa again concedes is satisfied by the FACE Act – is that the statute confers an enforceable "right." This first hurdle is the only one addressed in *Medina*. If the first hurdle is cleared, then – as the final sentence of the paragraph states – a plaintiff must then clear the second, which is demonstrating that the statute displaces § 1983 by providing a more specific remedy. The *Medina* Court made this clear. It cites *Abrams*, a Supreme Court case that began by assuming – as the parties there agreed – that the statute in question created judicially enforceable rights. 544 U.S. at 120. Thus, in *Abrams*, the plaintiff cleared the first hurdle. *Abrams* then reasoned, again in the passage cited by *Medina*, that even after a showing that the pertinent statute creates an enforceable right, there is only a presumption that the right is enforceable under § 1983, and a defendant may rebut the presumption by demonstrating the statute itself creates a comprehensive enforcement scheme that is incompatible with individual enforcement through § 1983. *Id*. In short, it is clear under *Abrams* that a statute may secure a right, yet still be unenforceable under § 1983 due to its own comprehensive enforcement scheme. Finally, to return to the Oropesa majority's sentence, the fact that a federal statute has displaced § 1983's general cause of action with a specific remedy, the second hurdle, is not relevant to determining whether the statute secures a right, the first hurdle.

9

Garner, *Reading Law: The Interpretation of Legal Texts* 313 (2012); *Medina,* 145 S. Ct. at 2233.  "But that principle," the *Oropesa* majority continued,

> has little bearing in the criminal context, and even less here, as the Supreme Court has told us in no uncertain terms that Section 241, "from original enactment through subsequent codifications, was intended to deal .... with conspiracies to interfere with '"Federal rights, and with *all* Federal rights.'" *Price*, 383 U.S. at 803 (emphasis added). In this sense, the respective scopes of the rights enforceable through Section 1983 and Section 241 each reflect a willingness to apply each statute's penalties as Congress intended; it is just that Congress intended for Section 241 to cover "all rights and privileges under the Constitution and laws of the United States," as is clear from the plain text of the statute. *Id.* at 802.

*Id.*

Finally, the *Oropesa* majority reasoned that, even if the presence of a comprehensive enforcement scheme could (like § 1983)  limit the scope of § 241, the FACE Act's enforcement scheme is not comprehensive by virtue of its saving clause, which provides that nothing in the statute "shall be construed ... to provide exclusive criminal penalties ... with respect to the conduct prohibited by this section." *Id., quoting* 18 U.S.C. § 248(d).[12] The majority reasoned that the FACE Act does not include a conspiracy provision, and that a conspiracy offense is distinct from, and may be punished more harshly than, the underlying substantive

---

[12] In his concurring opinion, Judge Jordan emphasizes the FACE Act's saving clause as the primary reason that the Act may serve as a predicate for a civil rights conspiracy prosecution brought under § 241. *Id*. at 920 (Jordan, J., concurring).

10

offense. *Id.* Citing *Abrams*, the majority reasoned that the text of the FACE Act's saving clause provides no evidence to demonstrate that Congress did not intend for § 241 to cover conspiracies to violate the FACE Act. *Id.*, *quoting Abrams*, 544 U.S. at 120.

Declining Oropesa's invitation to apply § 1983 caselaw to limit the scope of § 241, the *Oropesa* court concluded that the superseding indictment alleged a valid offense under Section 241. *Id.*

## STATEMENT OF FACTS NECESSARY TO ARGUMENT OF THE ISSUES

This petition for rehearing en banc raises only issues of statutory construction.

## ARGUMENT AND AUTHORITIES

The *Oropesa* court declines to apply to 18 U.S.C. § 241 an important limiting factor that the Supreme Court has applied to its civil counterpart, 42 U.S.C. § 1983, despite materially identical statutory language. The Supreme Court's § 1983 jurisprudence, particularly *Middlesex Cnty. Sewerage Auth. v. Sea Clammers,* 453 U.S. 1 (1981),  and *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113 (2005),[13] establishes the rule that, if a predicate statute contains its own comprehensive enforcement scheme with more restrictive remedies than those afforded by § 1983, then the predicate statute is not among the "laws of the United States" that can be enforced through § 1983. Oropesa argued that, because of its own comprehensive criminal enforcement scheme and misdemeanor penalties (as opposed to the felony penalties afforded by § 241),  the FACE Act 18 U.S.C. § 248, is not among the "laws of the United States" that may be employed as a predicate for a felony prosecution under the 1870 conspiracy against rights statute, 18 U.S.C. § 241.  Oropesa urges this Court to reconsider her contention that the same limiting principle the Supreme Court has applied to § 1983 should also be applied to § 241,[14] and find that the comprehensiveness of the FACE Act precludes

---

[13] The limiting factor was reaffirmed in *Health and Hospital Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023).

[14] The government also acknowledged, "Because there are relatively few cases considering whether a civil rights statute creates a right enforceable under

15

the government's reliance on it as a § 241 predicate. Indeed, the purpose of this critical limiting principle has even greater resonance for a criminal statute like § 241, given the enhanced importance of fair notice and the need to avoid vagueness. It is Congress, and not the Executive, that has the exclusive constitutional authority to define crimes, and it is this separation of powers consideration that should govern.

Neither this Court, before *Oropesa*, nor the Supreme Court has considered whether the *Sea Clammers/Abrams* limitation also applies to § 241. But the best explanation may simply be how rare § 241 prosecutions based on violation of federal statutes – as opposed to the Constitution – have been. According to the Congressional Research Service,[15] in an article addressing Section 241's substantive counterpart, 18 U.S.C. § 242,

> With regard to the "laws of the United States," it is unclear if DOJ has brought Section 242 charges in recent history based solely on statutory violations. In the analogous context of civil claims under Section 1983, courts have shown reluctance to imply a civil remedy for statutory violations; the courts may be even less likely to impose criminal liability under statutes that do not expressly provide for it.

Congressional Research Service, "Federal Police Oversight: Criminal Civil Rights

---

Section 241, it is helpful to examine the law that has developed under 42 U.S.C. § 1983." (Doc. 108 at 7) (referring to whether a given law "secures" a "right.")

[15] The *Medina* Court recently cited another Congressional Research Service report. *Medina*, 145 S. Ct. at 2226.

14

Violations Under 18 U.S.C. § 242," p. 2 (June 15, 2020) (emphasis in original). (Available at: crsreports.congress.gov/crs-product/LSB10495.) Moreover, before 2022, the United States never attempted to prosecute a § 241 criminal conspiracy against rights in which the predicate offense was the FACE Act. *See United States v. Handy*, __F. Supp. 3d __, 2023 WL 4744057 at *3 (D.D.C. 2022) (noting that the first such effort occurred in 2022). Twenty-eight years after enactment of the FACE Act, the United States for the first time asserted this novel prosecutorial experiment in four indictments nationwide, and to date this is the only one of the four to be considered by a circuit court of appeals.

In the context of construing the term "laws of the United States" as it appears in § 1983, the Supreme Court primarily evaluates whether the "law" sought to be enforced through §1983 contains its own sufficiently extensive enforcement scheme. If it does, the Court consistently holds, supplemental enforcement through §1983 is not available. In *Sea Clammers,* for instance, the Court held that, "When the remedial devices provided in a particular act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." 453 U.S. at 20. Noting that the two environmental statutes addressed in *Sea Clammers* provided (much like the FACE Act) an array of remedies including government compliance orders, civil suits, civil and criminal penalties, and civil suits by private citizens, the Court found that

15

§ 1983 was unavailable as an additional enforcement tool. *Id*. at 13, 20. The Court

concluded, "It is hard to believe that Congress intended to preserve the § 1983

remedy when it created so many specific statutory remedies." *Id*. at 20.

Acknowledging that it previously held in *Sea Clammers* that Section 1983

authorizes suits to enforce individual rights under federal statutes as well as the

Constitution, the *Abrams* Court reaffirmed  that, "a defendant may demonstrate

that Congress did not intend to create a remedy under §1983 for a statutory right by

showing that the statute created a '"comprehensive enforcement scheme that is

incompatible with individual enforcement under § 1983."' *Id*. at 120 (quotation

omitted). According to Justice Scalia's opinion for the *Abrams* Court,

> The provision of an express, private means of redress in the statute
> itself is ordinarily an indication that Congress did not intend to leave
> open a more expansive remedy under § 1983. As we have said in a
> different setting, "[t]he express provision of one method of enforcing
> a substantive rule suggests that Congress intended to preclude others."
> Thus, the existence of a more restrictive private remedy for statutory
> violations has been the dividing line between those cases in which we
> have held that an action would lie under § 1983 and those in which we
> have held it would not.

*Id*. at 121 (quotation omitted).

The *Oropesa* court emphasizes that the Supreme Court – unlike in the §

1983 context – has not applied the *Sea Clammers/Abrams* limitation to § 241, and

therefore the utterly unlimited language of *Price* prevails. *Oropesa*, 159 F. 4th at

918, *citing Price*, 383 U.S. at 804 (noting that *Price* noted that § 241 covers

conspiracies to violate "*all* Federal rights."). The *Oropesa* majority reasoned that this absolute and plain language reflects a deliberate congressional intent in § 241 to recognize no limitations, in contrast to § 1983.

This reasoning, though, ignores an important fact: the plain and absolute language of § 1983 recognizes no limitations, either. Indeed, one Term before *Sea Clammers,* in 1980 (14 years after *Price*), the Supreme Court in *Maine v. Thiboutot,* 448 U.S. 1 (1980), rejected the argument that the phrase "laws" should be limited to some subset of "laws." *Id.* at 4 (observing that Congress attached no modifiers to the plain language of § 1983). Yet, only one year later in *Sea Clammers,* the Supreme Court ruled – on the basis described above - that the phrase "laws" was not absolute. Accordingly, separation of powers considerations, specifically judicial deference to Congress's plain, absolute language, has not been a bar to the Court's recognition of the *Sea Clammers/Abrams* limitation on § 1983. Similarly, as *Thiboutot* did not bar the Court from recognizing in *Sea Clammers* and *Abrams* that the term "laws" in § 1983 is not absolute, *Price* does not bar courts from recognizing that the term "laws" in §241 is not absolute, either.

Turning finally to the saving clause issue, both *Sea Clammers*, 453 U.S. at 20, n. 1, and *Abrams*, 544 U.S. at 126-27, held that the saving clauses in their respective statutes only preserved remedies under *other* statutes, not the same statutes that were merely enforced as predicate "laws" through § 1983.

17

CONCLUSION

Oropesa respectfully requests this Court to grant her petition for rehearing en banc.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically to the following on the 22nd day of December 2025:

Assistant Attorney General Harmeet Dhillon
Harmeet.Dhillon@usdoj.gov

AUSA Greta Gieseke
Greta.Gieseke@usdoj.gov


/s/ *Matthew Farmer*
COUNSEL

18

19